May it please the Court, Matthew Stigler on behalf of the appellant, Jason Piasecki. I'd like to reserve four minutes of my time for rebuttal. I'd like to start off with a part of my argument that I think may look like the weakest part of my argument. I want to focus on the way that some of the other circuits have approached the question of whether sex offender registrations, registrants in custody, and I want to set that up just real briefly by summarizing what my affirmative position is. My affirmative position is that this case is controlled by Barry v. Bergen County, that the limitations on physical liberty that are the key to this case are the in-person registration, the quarterly registration, the in-person updates, the limitations on housing being barred entirely from being public housing, and the limitations on travel with the requirement for a 30-day advance notice to go to another country. Barry only was, you know, 500 hours of community service, was it not? Yes, correct, Your Honor. And, well, so, and Barry v. Bergen is talking about that in the context of... That may be the strongest part of your case, so what was the weakest part? Well, I think the weakest part of it is, if you read the briefs, I think it looks like what we're asking the court to do is to disagree with five other circuits. I want to explain why that's not the case. The leading cases from the other circuits that have looked at this question, there's a Ninth Circuit case, Williamson v. Gregoire, Seventh Circuit case, Biersnicks, and they're the ones that analyzed this question most closely, and both of them looked at it the same way. They said there aren't any limitations on physical freedom in this case because there's no in-person registration requirement. The only requirement under these states are the registration that can be done by mail, and so that's the key thing that they're looking at, and they're relying on a second important factor in those cases as well, which is that the state courts, with respect to those state laws, have said that those statutes were remedial and not punitive. And the argument that they're focusing on is a different argument, not one that we're advancing here. The petitioners in those cases were arguing, well, there's this sort of contingent, there's a threat of future incarceration that I'll face if I violate these conditions, and so therefore I'm in custody now because that might happen later. What we have in here I'm not that familiar with. I looked at the state courts way before SORNA came along. What would happen, let's say that Mr. Piasecki does not comply with one of the promises, he does not report to the court or the state police or something like that, what's the sanction for that? He'd be prosecuted for a felony violation. He's no longer being supervised by a judge, correct? Yes, that's correct. So in the traditional probation parole sense or even the state parole board, here if he were to violate, the state police would have to charge him with a crime and he would be re-prosecuted. Right, it's a new prosecution. My understanding is, and this could evolve in Pennsylvania, and these could impact the answer to this question over time, but as it stands now, my understanding is the answer is that nothing would happen in the original case that they would initiate a new prosecution. But had he been under supervision when the violation took place, he would go back to see a judge. The SORNA is a lifetime registration, so once the supervision ends, the remedy would be a re-prosecution, correct? That's correct, but I think that might also be the remedy for somebody who's still under supervision. If he's under probation in Pennsylvania, he's going to be up in front of the original judge for the probation violation, but it's not clear to me, under Pennsylvania law, whether that proceeding would be the one that would initiate the new felony charge or whether that is going to happen separately, and I suspect that that probably happens different ways in different cases. What meeting of felony is it? I'm sorry, I don't know the answer to that. Meeting of felony, one, two, three? I'm not sure. I want to say two, but I'm not certain about that. Okay. I think that's in our brief, so I think we've got that answer, but I'm sorry for saying that. Okay. So I talked about kind of the easier cases from the other circuits, and those are the cases where they explicitly relied on the fact that there's no in-person registration requirement to say that there's no custody, and those cases, I think, are the ones that are not merely distinguishable, but I think at least implicitly those cases are helpful to us. They're saying it's not custody because there's no in-person requirement and it's not punitive, and that implies that if there was an in-person requirement and it was punitive, then it would be custody. So is the registration here still part of the criminal sentence, notwithstanding the fact that he's no longer under supervision by a judge? Yes. By force of Pennsylvania law, it is part of the sentence, and that's also true because the judge pronounced it at the time of sentencing, but the real point is that now... I would assume it happened before Muniz, maybe I'm wrong, but it's really Muniz that makes it part of the sentence. Yes, I agree with that. I think this would have been a hard argument before Muniz if all we had to rely on was the language that the judge used in pronouncing sentence, but Muniz really changed the landscape in Pennsylvania because what it said very clearly is that the registration requirements are punitive, and that means that they're part of the sentence. It's punishment for the original crime in the same way that prison is and probation is, and that's the same kind of state law determination, state court determination, punitive, not punitive. The courts have always looked to in this context in determining what it means, and so it's relevant in that sort of direct context. Courts looking at whether it's custody look at whether it's punitive, but it's also relevant in this sort of broader way because it shows that this is part of the sentence. As a matter of Pennsylvania law, this is part of the sentence, and so if the statutory interpretation that the court is making is whether he is in custody pursuant to the judgment, well, it's an easy answer if it's part of the sentence.  It was something that was sort of obviously nearly collateral, and we knew it wasn't part of the sentence, and I could get your argument that he's in custody anyway, but that would be more difficult. That would be uncharted territory that this court would have to explore, but this is an uncharted territory because we know that it's part of the sentence under Muniz and the cases that have come after it. So you're saying in effect that under state law that this notification requirement under SORNA is considered punitive? Yes, that's the whole meaning. Yes, understood. I'm backing up to the Supreme Court case of Millen and then later Koss. Millen, the Supreme Court left open the question of whether you can inquire into the validity of a prior sentence while reversing second sentence, sentence B, but the Supreme Court seemed to have closed that door in Koss when they held that once you have a state condition that's no longer open to direct or collateral attack, you can't have habeas. Right. And your way around that would be? Well, I don't think that issue is implicated by this case at all. For example, I think Monser, the non-published opinion that this court issued, I think that gets into that kind of question, but I don't think that's implicated here. It's not that what you're describing would be an issue if his case was over and then in the course of some subsequent prosecution, say he violated the terms of his SORNA and then was re-prosecuted under a new case number and went in there and said, no, no, my defense to the current prosecution for the SORNA is that the underlying conviction is invalid. That's where that would be implicated. But this is still his challenge to the conviction. He got convicted, he did a direct appeal, he went through a PCRA, and now he's in habeas and it's all talking about the validity of the underlying conviction. So how is this case similar to Monser or not similar to Monser? I thought Monser was, when you had a registration requirement that was imposed, the question is was it pursuant to a judgment of a state court, I think. Here's what I'm talking about with Monser. Monser had this sort of floodgates argument that the court was talking about and saying, oh my goodness, if we say that this guy is in custody, then all he has to do is violate the terms of his SORNA and then he'll be able to get back and do a habeas any time he wants to. They'd be giving them a benefit that other folks wouldn't have. And I don't think that concern applies in any way to this case because we're not talking about somebody who's coming in with some kind of subsequent conviction. I mean, I think that kind of case is going to have a really tough argument. I think Monser's concern is unfounded because I think that guy is probably going to lose. But the problem that he has with that sort of collateral attack of something that happened in the prior case, I don't think that's implicated by the facts here. Because this is the habeas challenge to his underlying conviction, because his constitutional claim here is a Miranda, on which the court granted COA, is a Miranda challenge to the actual conviction. It's not some step to part of the process. So of the other circuit cases, the one that I think is the hardest for us is Wilson v. Flaherty, the Fourth Circuit decision with a split panel. And there they did actually engage with whether in-person registration put them in custody. And the court said, no, it didn't. But the in-person registration obligation that they were talking about in that case, that they were describing, was one where it was merely annual registration. That that was the only limitation on physical freedom that they're talking about there. They said that they relied on the idea that it doesn't impair Wilson's ability to move to a different residence, and relied on this idea that there's no discernible impediment to his movement. And we're distinguishable on all three points in what I think is a pretty dramatic way. And it's not just annual versus four times a year. Because under the Pennsylvania system, the four times a year simply operates as a baseline. So you know that every 25 years you're on the registry, you're going to have to go in 25 times in person and do that registry. But that's just the baseline. The most burdensome part of Pennsylvania's regime are these updates. Some of the updates are major life events. You buy a new house. You take a new job. That obviously, that triggers you having to go into the barracks. You're talking about your cars and your beards and all sorts of stuff. Yeah, right. If you buy a new car, you've got to go in. But if you operate a new car, if you normally park your car on the block in front of your house, but you got home from work and all the spots were taken, and so you had to park two blocks away, you've got 72 hours to get to the barracks to tell them that or face felony prosecution for it. And so there's a lot of these very day-to-day kind of triggers that trigger the requirement to be there in person, setting up a new e-mail account. In this part of my mind, if you're homeless, you have to show up in person and do what? You can't tell them where you're living that night? What do you do when you get there? Well, you sit there for a couple hours waiting for them to process your paperwork, and you fill out the update. I believe there's 136 different categories that you have to keep them updated on. So if there haven't been any changes since one month ago when you had to come in, then you fill out the paperwork and you'd submit it, and they'd enter it in, and you'd have to sign it, and then they'd let you go on your way. But if there have been any changes, then you have to come in in between that once-a-month obligation. But you're not challenging the conditions of the restriction. You're just arguing that the restriction is supposed to be procedure. Absolutely. We're not arguing that someone is bad or unreasonable or unconstitutional or any of that. All we're saying is that it's enough of an infringement on physical liberty that it triggers the custody test. Thank you. Thank you. You said time, I think? I did. I said four minutes. Okay. May it please the Court. Steve Harris from Boston District Attorney's Office. I want to start by asking you something to be sure to do. Many, many years ago when I was in state court, I had this habit of imposing what I thought were constructive conditions of my probationary sentences. And it was GED and looking for jobs, sometimes keeping the journal that would go over with guys periodically to see how they were coming, book reports. One guy, I think I learned more from him than anybody, either in the State Sentence Commission or the ALI or anybody else, I gave him all these conditions. He looked at me and he said, Judge, I respect what you're trying to do, but if that's what I've got to do to honor your probation, give me my time right now. I can't do that. And then he said, if I could do all that, I wouldn't be here. He was absolutely right. And I stand on that to suggest to you that this seems to me, this sort of construct, more restrictive, i.e. custodial, than a term in state jail. Of course, the interesting thing is that it doesn't apply anymore. As we said, we filed a letter brief and pointed out that on February the 21st, Governor Wolf signed into law, effective immediately, a law which returned everyone that was sentenced before December 2012 back to the law as it existed at that time. So is it true that he's now under Megan and not under Sorter? That's exactly right. So he's right back. This is sort of one of the fascinating elements of this, as we find ourselves here in the third circuit, that this guy is right back to where he was under Megan's law. That's number one. What are the differences? Oh, well, there's not that quarterly registration. What are the registration requirements then currently? Excuse me. And by the way, the district court has considered Megan's law many times and has found it not to be custodial. There is a one-year in-person registration, but after the first year you don't have to register in person anymore. You must advise of changes of address, the employer, within three days. What if you're homeless? I'm sorry. What if you're homeless? What if you have no address? Does Megan's law apply? You say, I have no address. I'm living on the street. And how often do you have to do that? You only have to register in person for one year. So if a person's homeless, they have to go in and tell them, And then a year later, if they're still homeless, they would repeat that? Is that it? No, no register for the first year. After that, when you change your job or you move or you do anything like that, then you have to register to say, I've moved to another location. I've taken a new job. It's something of that nature. And then, of course, you're maintained on the list, the Internet list of the Pennsylvania State Police. But you don't have these, I mean, I have to say, the court registry in person quarterly is restricted. However. Would you say it's custodial? No. And why? In the case, in that Mallin case, the court said, the Supreme Court has, this is what they said, has never held that a habeas petitioner may be in custody under conviction when the sentence imposed for that conviction has fully expired at the time that the petition is filed, which is what happened here. You put the rabbit in the hat when you said fully expired, because obviously if someone is serving a term of probation, the sentence hasn't fully expired because probation is a condition of the sentence. But his probation had expired. His probation had expired two and a half years before he filed his habeas corpus. So I would agree, if he was on probation or parole, he'd be in custody for the purpose of being able to challenge his conviction under habeas, but he wasn't. He'd been out of that for two and a half years. And the court goes on. Once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual in custody for purposes of a habeas attack upon him. That goes to Mitzer and whether or not this is a collateral consequence or part of the sentence. Well, it is. Let me, if I may, try to explain why it is a collateral consequence. It is because the act wasn't even, it wasn't SORNA, SORNA wasn't enacted until two and a half years after this man was convicted. It is a collateral consequence because it came about as a result of the legislature passing an act which changed the registration requirements for people who were convicted of sexual offenses and then depending on what sexual offense you were convicted of, you were either placed into tier one, tier two, or tier three. So this was not in SORNA, which is what we're faced with as we stand here today, is not only not applicable to him today, no longer applicable to him today, but in addition, he became subject to two and a half years after he was sentenced. That's a collateral result. We cite cases in our brief where the court has found that a person who was subject to deportation and is being held in jail is considered not in custody once the sentence has expired. So to me, that's the defining fact. Barry is distinguishable because in Barry, he was subject to the three, I think it was three hundred hours, five hundred hours of community service and that continued, that was part of his sentence. The sexual registration requirement isn't part of the sentence, it's a result, if I may continue for just a moment, Your Honor, it's a result of the conviction. And you have to decide as a result of the conviction where the person stands and where his requirement or her requirement for registration stands before he or she can be sentenced. I'm sorry. No problem. My wife does it all the time for good reason. The problem here is that normally when you look at the other cases, they're saying that SORTA is a reporting requirement and it's not a sentence in court's designation or part of the sentence. But it looks like in this jurisdiction, it looks like courts are saying it's punitive. But more appropriate to this particular case, you've got a judge who's really trying to do the right thing here. And she has him in here. She says, But you understand you're still going to be under supervision and you're still going to have to register as a sex offender. You understand that? The answer is yes. It goes on. So the conditions I'm going to have you sign, I said you should undergo sex offender supervision, you're subject to tenure registration, you have no supervised conduct with minor children under 18, excluding your son and your girlfriend's son without written permission, no computer internet use, and continuing treatment with Dean Dixon and Dr. Nover. You're not to drink and take medications as directed. Any other conditions anybody's asking for, and it goes on. So as to counts 16 through 30, and as to each count the defendant is sentenced to a 36-month county probation, the conditions of his sentence are that he undergo sexual offender supervision, that he be subject, et cetera, et cetera. So it looks like in this particular case, SORNA was tied in as a condition, an element, a part of the sentence. Two answers to that, Your Honor. SORNA couldn't be tied in as a condition because it didn't exist. It didn't exist until two and a half years later. Secondly, if in fact… So this was all under Megan's law then? Yes. This was all under Megan's law. Although would anything have changed if SORNA was in effect that two and a half years prior to the time that it actually existed? Well, at least you have the argument that, well, these conditions were put on this man when he was sentenced. I disagree, and we've said it in our brief. The requirement of the sexual offender's laws are that the person be notified at the sentence that they will be subject to the offender registration. And as you pointed out, the judge was very careful in doing that. She did use the word condition of the sentence, but I suggest to you that was nothing more than notifying everybody in the courtroom so everybody knew that this man was subject to a sexual offender's act. Not only that… But she had the authority to make it… Because if she has the authority to make it a condition of the sentence, then I don't know why she wouldn't. Well… She made the argument, but she maybe intended that. Judge McKee, if she did that, it expired when probation ended because the condition of sentence could only last as long as the sentence lasted. So that's why, again, I contend that this is collateral to the condition, not an element of the condition. It goes back to… And as far as Muniz is concerned, that was only a plurality decision, so it isn't binding. But you have a situation here where the… Every court, and I respect opposing counsel for trying to distinguish them, but every court, every circuit court that is considered the federal SORNA, which is basically identical to the Pennsylvania SORNA, and we string cite them because we're good at that sort of thing, the 1st Circuit, the 5th Circuit, the 7th Circuit, the 9th Circuit, the 10th Circuit, and the 11th Circuit have all found that the restrictions of SORNA don't render a person in custody for the purpose of habeas corpus. And two circuits have considered state SORNA statutes that are virtually identical to Pennsylvania. Those are the 6th and the 9th that came to exactly the same conclusion. And so this man is now subject to maintenance law requirements, and we've cited various Pennsylvania cases as well as various federal cases, all of which have said that that's not in custody. And Bonser is relevant here because if somebody says, okay, this is equivalent to custody, then somebody can… And these are lifetime or longer reporting conditions. That means even though the sentence is completely finished, and as you asked, Your Honor, once the sentence is over, if the person violates the terms of whether it's maintenance law or whether it's SORNA, they're not brought back in to be re-sentenced or punished under the original condition. That's over. It's a question of whether or not that person has violated the registration requirements, and if that person has, that's a whole separate crime and a whole different item. So it's our position that this is a collateral result, that the Supreme Court has specifically said that once the sentence is imposed, a collateral consequence of a conviction is not in custody for purpose of Hager's relief. We urge you to confine both the magistrate, who did, I thought, a wonderful job, and the district court who upheld the report and recommendation and dismissed the objections to it. I would ask that that be affirmed. How much longer will these now Megan's Law conditions be in play? I believe it's back to the 10 years. Okay. So he's in the same position as he stood on the day that he was sentenced. So in attempting to determine whether there's the predicate for habeas, you have to be in custody, and custody means are there sufficient restraints on your liberty so as to amount to being in the custody of someone else. Is that correct? No, I think that's overly restrictive. The Supreme Court said, and I want to read that again because I think it's important, in mailing, the court said, it is never held that a habeas petitioner may be in custody under a conviction when the sentence imposed by that conviction has fully expired at the time the petition is filed. Once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not then, themselves, sufficient to render an individual in custody for purpose of a habeas attack. So it's our position that this is purely collateral and therefore will never be the basis to justify jurisdiction under a habeas corpus. Once the sentence has expired. Well, I mean, you have a tougher case when you say costs. Once a state conviction is no longer open to direct or collateral attack, but here the goal is to have a collateral attack on a state conviction, but in order to do that you have to have custody, do you not? Yes. In order to have custody you have to have some type of restraint on liberty that amounts to what is deemed to be this word, custody. Well, but this person did have a full opportunity to challenge his conviction. He challenged it through the state court. He challenged it on a direct appeal. He challenged it on a PCRA. So he hasn't been denied the right to have a full, complete challenge. That argument, I think, opens the bonzer door. Everybody who's subject to these requirements, whether they be Maidens Law or SONA, is going to have the right to file a habeas corpus petition after their sentence has been fully expired. That just can't happen. Thank you. So let me start off by talking about the new law. That is not relevant to this appeal because going back 50 years to Carafa's Supreme Court case and consistently applied ever since, whether somebody is in custody is a determination that is made at the time that the habeas petition is filed. This habeas petition was filed December 4, 2014, so we're looking at what were the conditions of custody that he faced on that day. If the conditions no longer pertain to him, you're not saying that's an irrelevant consideration, is it? I am. And so, for example, this is exactly what Carafa's talked about. They said, here's a guy who is in jail at the time he filed this habeas petition, and then they released him unconditionally afterwards before his case came forward. Well, this is an example of somebody who's been in life imprisonment, and two days later he's given a complete pardon. A year after the pardon, he comes in and says, you know, I'm still in custody because I was sentenced to life imprisonment. No, no, that would be absolutely different because that would be a mootness issue, and it would render the constitutional challenge, the underlying claim, moot. If he's been pardoned, he doesn't have anything left. Well, that's true. If it was a legal matter, it would. The pardon would be violated. But the point I'm trying to get at is, I agree that the law is that you look at the conditions or the level of restriction at the time the petition is filed, but I'm wondering why there can't never be a situation where a subsequent event changes the nature of the person's restrictions. Well, there could be. There are lots of situations where a subsequent event would. The main one is what I refer to, where there's something that moots the underlying constitutional claim in some way. The change here was one that reduced his custody, but it could have been a change that took away the custody argument. You agree that he's not a subject, not a discerner, but to Megan's law. Well, I mean, I would quibble with that only in the sense that he is too— He's the man who didn't lose the war. You know, when he's ticked, he'll yell. I mean, this is essential to my argument, but I actually don't agree. He is today subject to either Tier 3, classified as a Tier 3 sex offender. If he parks in the Ron Martin spot today, he has to go and tell him that in person, or if he's subject to felony prosecution. They haven't changed his status. They're going to get to him, I assume. Maybe the issue is to begin to find out what the nature of the restriction is, which is one of the other issues here. I mean, I respectfully disagree with that because I think that the only question— A subsequent change, if it went to the underlying conviction, would be a different matter. There you would say this is something where the court can't grant him the relief that he's asking for anymore. But the custody requirement serves a very simple function. It's to say on the day that he filed, what were the restrictions that he was subject to? And it doesn't matter how quickly a court races through to decide the case. Like in Pennsylvania, it matters. And I respectfully disagree with my opposing counsel. He didn't get a full fair review, even in state court. He didn't get any habeas, but all he got was the initial level of the PCRA review. He didn't get the appeals because in Pennsylvania they say if the court has run out the clock, then we're done. We're not going to consider your case. But they specifically chose a different rule in Carafas to say once you're in the door, once you've got jurisdiction, then the court doesn't have to race through and the petitioner doesn't have to race through. We're going to say that the jurisdiction survives. And that's a rule that this court applied in Barry v. Bourbon County, and it's applied it more recently than that. So I really don't think that that statute, it could have gotten more restrictive, it could have gotten less restrictive, and it has no bearing on the question of whether he was in custody on the day that he filed his petition. And I think that's just absolutely hornbill clear habeas law. How do you, I mean, if we were to go your way, in effect extend Barry or take off from where Barry left off, wouldn't we immediately be hit with you're creating a circuit split? Well, no, because most of the circuits, most of those opinions in those string sites, are the ones that said no custody, not punitive. There's no split in those circuits. I think that's very clear. The harder ones are the Calhoun of the 10th Circuit, and Henry v. Longman from the 9th Circuit, where they were talking about a statute that did have an in-person registration requirement. And this court could say, well, you know, we think Judge Wynn was right in the dissent in Wilson, and we think Judge Niemeyer had it wrong. I mean, the court could say that, but I don't think it has to. I think the court could say, you know what, we can assume the Fourth Circuit was correct, that annual registration and nothing more is not enough to constitute custody. But here we've got quarterly registration and a whole lot more. And so, you know, we don't have to decide whether any circuit was wrong on their facts, because we've got different facts. And we've got a state where the state court has determined that this is a punitive statute, and that's something that none of those courts were looking at. And we've got a state that has said that the registration requirements are a part of the sentence. And I understand opposing counsel's argument that that's something that's merely collateral, but there's a lot of Pennsylvania law that has come out in the past year that supports our side of that argument, where it's the Supreme Court and the Superior Court saying we will vacate the sentence, and we're going to remand for resentencing purely to correct a sworn issue. They've done it on direct appeal, and now with the cases that we cited in the 28J, they've also done it in the PCRA context. And that really matters, because in the PCRA, all that they're allowed to reach in that case is a sentencing issue or a conviction issue. They're not allowed to send it back and grant relief on some sort of collateral issue. If it was a collateral issue, it couldn't be a PCRA issue. And so all of those cases that have done that, and Commonwealth v. McCulloch, it says, hey, look, we had this line of cases before that sort of made it seem like this wasn't part of the sentence. And so we had this idea that if the probation part of it was over, then you had to include the state police as a necessary party. That is overruled. That is no longer the law in Pennsylvania after Mooney's, because it rested on the false premise that the registration requirement wasn't part of the sentence. Let me back up to a suggestion Judge McKee had, and that was with respect to a remand. Do we have a robust enough record to determine what the actual conditions of your client's reporting are right now? There's no evidentiary hearing conducted here, correct? Yes, correct. So do we have a sufficient enough record to establish what the actual reporting requirements are? Well, I mean, certainly my primary argument is that we do, that we can look at the face of the statute, we can look at these 136 requirements and the quarterly registration and the 30 days notice, and say absolutely, we can tell from that. Now, we've got a fallback argument, and my fallback position is, yeah, if you think we haven't met the standard yet, then you can send it back and we can talk about what these conditions actually look like on the ground. What you do is these conditions, and you're saying it's these conditions are certainly lying in carpets, and Hensley also helps you with that. Right. What I'm saying is let's look at what the conditions were that were in place on December 4, 2014, and how did that apply, and the fact that he did take hours when he's going in to the one place in Philadelphia County where he's able to do this, and all that sort of burdensome nature. I mean, that's the kind of thing that you can develop. He's in a locked room as he's preparing. They don't let him out of it until he's completed this update process. I mean, we can show that, and I think that kind of helps to put some meat on the bones, but certainly my primary argument here is that we can look at the requirements that are in the statute and say that absolutely is. I mean, my argument would be if you would give a prisoner a choice and say, okay, you can either have 500 hours of community service, or you can have this lifetime sworn obligation where you have to go in with all those requirements, I think most people would say give me the 500 hours of community service. I think that's less of a burden on physical liberty. The person I was talking to, the defendant, asked me to give him a coming sentence as opposed to those kinds of restrictions on probation. I mean, there's a point that I think is easy to sort of miss in just kind of reading the language of the statute here, but it's not just that you have to go back and forth to Belmont Plateau in order to do this with a lot of frequency, a lot more than just the quarterly, but it can really be tremendously disruptive of these people's lives. I mean, so here's an example. Let's say that I'm on the sworn registry, and I take my daughter to Disney World, you know, vacation of her lifetime, and we're down there and the sun's shining. We rent a car, and I just kind of get lost in the moment, and I drive the rental car back from the rental car place to the hotel. Well, my vacation is over. I'm going back to Pennsylvania because I've got 72 hours to appear in person to say, I operated a vehicle that you didn't have on your list, and if I don't do that, then you can come after me with a felony prosecution. The vehicle probably had several computers inside of it that were talking to the Internet, which is another violation. Yeah, right. And the same example is in the amicus brief where the example they gave was, your mother lives in Toronto, Canada, and she dies, and the funeral is in seven days, and any member of the general public is going to be able to go to that funeral, and if I go to that funeral, I am violating the condition. I am not able to do it. I can't go to a judge and say, hey, you know, give me some sort of bypass. I'm forbidden to go to that. That funeral's going to happen without me being able to be there, and so part of my argument is that it's a time-consuming burden, so you're having to go back and forth and do this, but it's also a really tremendous real-life barrier for the people who are on that list. I think we understand your argument. Can we also do a transcript of this argument? Again, it's still Marina, the person that you speak to, to work out an arrangement of how you get a transcript. Thank you. Thank you. Thank you. Thank you. Thank you.